**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**ALCOLA EDWARDS**, **BAKEEMA BROWN**, and **PARIS LOUIS**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**DEVRY UNIVERSITY, INC.**,

Defendant.

Case No. 1:25-cv-15477

Honorable John F. Kness

**DEVRY UNIVERSITY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Gregory E. Ostfeld (#6257163)
Nair Marie Banks III (#6352628)
GREENBERG TRAURIG, LLP
360 North Green Street, Suite 1300
Chicago, IL 60607
(312) 456-8400
OstfeldG@gtlaw.com
Nair.Banks@gtlaw.com

*Counsel for Defendant DeVry University, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF FACTS AND ALLEGATIONS ........ 2

A. Plaintiffs' Allegations ........ 2

B. DeVry's Privacy Policy and Terms of Service ........ 3

LEGAL STANDARD ........ 5

ARGUMENT ........ 6

I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1). ........ 6

II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6). ........ 8

A. Plaintiffs Fail to State a Claim for Violation of the ECPA (Count V). ........ 8

1. DeVry Is a Party to the Communications at Issue. ........ 8

2. Plaintiffs Have Failed to Plead a Criminal or Tortious Purpose. ........ 9

3. FERPA Is Not a Crime or Tort, and Plaintiffs Have Not Alleged a Violation of FERPA. ........ 10

B. Plaintiffs Fail to State a Claim for Violation of the IEA (Count VI). ........ 12

C. Plaintiffs Fail to Adequately Plead Facts to Support Their Asserted Illinois Common Claims (Counts I to IV). ........ 14

1. Plaintiffs Do Not State a Claim for Invasion of Privacy (Count I) ........ 14

2. Plaintiffs Do Not State a Claim for Negligence (Count II) ........ 15

3. Plaintiffs Do Not State a Claim for Breach of Implied Contract (Count III) ........ 17

4. Plaintiffs Do Not State a Claim for Unjust Enrichment (Count IV) ........ 19

D. Plaintiffs Consented to the Collection of Their Data ........ 20

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....................13, 19

*Access Living of Metro. Chicago v. Uber Techs., Inc.*,
958 F.3d 604 (7th Cir. 2020) ....................7

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016) ....................15

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ....................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023), *reh'g denied*, No. 22-1892, 2023 WL 6144390
(7th Cir. Sept. 20, 2023) ....................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................6

*Bissessur v. Indiana Univ. Bd. of Trs.*,
581 F.3d 599 (7th Cir. 2009) ....................17

*Brown v. Learfield Commc'ns, LLC*,
No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024) ....................8

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ....................20

*Catalan v. GMAC Mortg. Corp.*,
629 F.3d 676 (7th Cir. 2011) ....................17

*Cleary v. Philip Morris, Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................19

*Cmty. Bank of Trenton v. Schnuck Markets, Inc.*,
887 F.3d 803 (7th Cir. 2018) ....................16

*Cosgrove v. Commonwealth Edison Co.*,
315 Ill. App. 3d 651 (2d Dist. 2000) ....................15

*Craftwood II, Inc. v. Generac Power Sys., Inc.*,
920 F.3d 479 (7th Cir. 2019) ....................................................................................5

*Ctr. for Dermatology & Skin Cancer, Ltd.* v. *Burwell*,
770 F.3d 586 (7th Cir. 2014) ....................................................................................5

*Dinerstein v. Google, Ltd. Liab. Co.*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ....................................................................14, 19

*Doe v. Deaconess Illinois Union Cty. Hosp.*,
No. 3:24-cv-02284, 2025 WL 2771415 (S.D. Ill. Sept. 29, 2025) ..........................................18

*Doe v. Genesis Health Sys.*,
No. 4:23-CV-04209-JEH, 2025 WL 1000192 (C.D. Ill. Mar. 18, 2025) ................8, 10, 16, 17

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008) ....................................................................................5

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ......................................................................19

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140 (2023) ...........................................................................18

*Gonzaga Univ. v. Doe*,
536 U.S. 273 (2002)................................................................................................11

*Goplin v. WeConnect, Inc.*,
893 F.3d 488 (7th Cir. 2018) ....................................................................................4

*Goulart v. Cape Cod Healthcare, Inc.*,
No. 25-10445-RGS, 2025 WL 1745732 (D. Mass. June 24, 2025)........................................10

*Hannant v. Culbertson*,
No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ..........15, 18, 19

*Hepp v. Ultra Green Energy Servs., LLC*,
No. 13 C 4692, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016) ..................................................4

*Horist v. Sudler*,
941 F.3d 274 (7th Cir. 2019) ....................................................................................19

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,
131 Ill. 2d 145 (1989) .............................................................................................19

*iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*,
2022 IL App (2d) 210785 ........................................................................................17

*Juenger v. Deaconess Health Sys., Inc.*,
No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) ......................15, 18, 19

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ......................................................................8, 15

*Kylie S. v. Pearson PLC*,
475 F. Supp. 3d 841 (N.D. Ill. 2020) ..........................................................................8

*Lawlor v. N. Am. Corp. of Illinois*,
2012 IL 112530 .........................................................................................................14

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016) ......................................................................................18

*Lisota v. Heartland Dental, LLC*,
No. 25 CV 7518, 2026 WL 91667 (N.D. Ill. Jan. 13, 2026).........................................7, 14

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989) ..........................................................................1, 7, 14, 17, 19

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992).......................................................................................................6

*M.C. v. E. Side Health Dist.*,
No. 3:24-CV-01336, 2025 WL 435992 (S.D. Ill. Feb. 7, 2025).......................................18

*Matthews v. Chicago Transit Auth.*,
2016 IL 117638 (2016) ..................................................................................................17

*Mayer v. Midwest Physician Admin. Servs., LLC*,
No. 23-CV-3132, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025)...........................................13

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ...........................................................................................6

*In re Michaels Stores Pin Pad Litig.*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ..............................................................................16

*Moorman Manf. v. Nat'l Tank Co.*,
91 Ill.2d 69 (1997) ....................................................................................................16, 17

*New v. Verizon Commc'ns, Inc.*,
635 F. Supp. 2d 773 (N.D. Ill. 2008) ..............................................................................17

*Nguyen et al. v. Abbott Lab'ys, Inc.*,
No. 24 CV 8289, 2026 WL 579206 (N.D. Ill. Mar. 2, 2026) ...........................................16

*Nguyen et al. v. Abbott Lab'ys, Inc.*,
No. 24 CV 8289, 2025 WL 2299753 (N.D. Ill. Aug. 8, 2025) ....................8

*Petta v. Christie Bus. Holding Co., P.C.*,
2023 IL App (5th) 220742, ¶ 17) ....................18

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ....................14

*In re Recalled Abbott Infant Formula Prods. Liab. Litig.*,
97 F.4th 525 (7th Cir. 2024) ....................6

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) ....................18

*Rizzi v. Calumet City*,
11 F. Supp. 2d 994 (N.D. Ill. 1998) ....................5

*Roe v. Amgen Inc.*,
No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................10

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ....................17

*Slovinec v. DePaul Univ.*,
332 F.3d 1068 (7th Cir. 2003) ....................11

*Spokeo Inc. v. Robins*,
578 U.S. 330 (2016) ....................7

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................9

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ....................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................6

*U.S. Food & Drug Admin. v. All. For Hippocratic Med.*,
602 U.S. 367 (2024) ....................6

*United States v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*,
376 F.3d 709 (7th Cir. 2004) ....................9

*Vega v. Chi. Park Dist.*,
958 F. Supp. 2d 943 (N.D. Ill. 2013) ....................14

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 6

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ........ 17

*Wright v. Assoc. Ins. Cos. Inc.*,
29 F.3d 1244 (7th Cir. 1994) ........ 4

*Zak v. Bose Corp.*,
No. 17-cv-02928, 2020 WL 2762552 (N.D. Ill. May 27, 2020) ........ 13

**Statutes**

Electronic Communications Privacy Act, 18 U.S.C. §§ 2511(1), *et seq.* ........ 1, 2, 8, 11, 12

Family Educational Rights and Privacy Act, 20 U.S.C. §§ 1232g, *et seq.* ........ 1, 3, 4, 5, 9, 10, 11, 12

Illinois Eavesdropping Act, 720 ILCS 5/14, *et seq.* ........ 1, 2, 9, 10, 12, 13, 14

**Other Authorities**

34 C.F.R. § 99.3 ........ 11, 12

Fed. R. Civ. P. 8(a)(2) ........ 6

Fed. R. Civ. P. 12(b)(1) ........ 1, 5, 6

Fed. R. Civ. P. 12(b)(6) ........ 1, 5, 6, 8

U.S. Const. art. III, § 2 ........ 6

Defendant DeVry University, Inc. ("DeVry" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' Class Action Complaint ("Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

Plaintiffs Alcola Edwards, Bakeema Brown, and Paris Louis (collectively, "Plaintiffs") bring this putative class action erroneously asserting that, as former DeVry students, they experienced data privacy violations arising from DeVry's use of third-party pixels on its student portal websites. Plaintiffs' Complaint attempts to shoehorn ill-suited wiretapping and eavesdropping statutes, and common law claims to fit allegations to which they are simply inapposite. Plaintiffs assert claims under the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. §§ 2511(1), *et seq.* and Illinois Eavesdropping Act ("IEA") 720 ILCS 5/14, *et seq.*, as well as common law claims for invasion of privacy, negligence, implied breach of contract, and unjust enrichment. Plaintiffs further seek to bolster their ECPA claim with unsubstantiated allegations that Defendant improperly disclosed "education records" in violation of the Family Educational Rights and Privacy Act ("FERPA") 20 U.S.C §§ 1232g, *et seq.*

The Court should dismiss Plaintiffs' Complaint for five reasons:

*First*, Plaintiffs' allegations fail to satisfy the threshold Article III standing requirement because the Complaint does not allege a concrete, non-speculative, injury-in-fact.

*Second*, Plaintiffs' ECPA claim fails because (i) DeVry, as a party to the communications at issue, cannot be liable for "intercepting" its own communications; and (ii) the crime-tort exception is inapplicable because Plaintiffs allege no facts showing that DeVry acted for the purpose of committing a violation of any predicate crime or tort.

*Third*, Plaintiffs' IEA claim fails because the provision on which Plaintiffs rely attaches no

liability to the alleged interception of electronic communications—just oral communications, which Plaintiffs do not allege were intercepted.

*Fourth*, Plaintiffs' common law counts assert bare recitations of legal elements devoid of factual allegations sufficient to support each claim.

*Fifth*, Plaintiffs' claims are barred because Plaintiffs consented to DeVry's Terms of Service and Privacy Policy, which transparently disclosed DeVry's use of Google Analytics pixels and explained how DeVry collects, uses, and discloses directory information and other data.

## STATEMENT OF FACTS AND ALLEGATIONS

Plaintiffs have filed suit against DeVry on behalf of themselves, a putative nationwide class, and a putative Illinois subclass, alleging six counts for: invasion of privacy (Count I); negligence (Count II); breach of implied contract (Count III); unjust enrichment (Count IV); violation of the ECPA (Count V); and violation of the IEA (Count VI).

### A. Plaintiffs' Allegations

Plaintiffs allege that they are Illinois citizens who, at various times between March 2015 and May 2024, attended DeVry as enrolled students. Compl. ¶¶ 15–16, 20–21, 25–26. Plaintiffs allege they were required to access DeVry's administrative portal at www.learn.devry.edu and its academic portal at www.devryu.infrastructure.com (collectively, the "Portals") to check "registration and financial aid status[,]" and "access course assignments, grades, and other course-specific functions." *Id.* ¶¶ 4, 16, 21, 26. Plaintiffs allege they were "logged into [their] Google account[s] on the same devices[s]" used to visit the Portals. *Id.* ¶¶ 19, 24, 29.

Plaintiffs allege that third-party Google Analytics pixels and cookies (collectively, "Tracking Tools") deployed on the Portals collected and transmitted Plaintiffs' "full names, registration status, course names and numbers[,] and other identifying information" (collectively

described in the Complaint as "Sensitive Information") to third parties without their consent. *Id.* ¶¶ 6, 11. Plaintiffs assert that DeVry's use of the Tracking Tools violated FERPA and infringed on their privacy rights. *Id.* ¶¶ 85–89.

Most of Plaintiffs' allegations convey Plaintiffs' understanding of how Google's Tracking Tools purportedly operate to capture various categories of sensitive data, and how companies allegedly use the data for advertising purposes, without specifically connecting these allegations to DeVry's website or Portals or to DeVry's marketing practices. *See id.* ¶¶ 7–10, 35–63. The few paragraphs in the Complaint pertaining to DeVry consist of conclusory allegations that DeVry "intentionally configured the Tracking Tools installed on the Portals to capture and transmit the Sensitive Information [Plaintiffs] communicated to Defendant while using its student portal." *Id.* ¶ 65. The Complaint includes screenshots purporting to "depict network transmissions made to Google by the Tracking Tools installed on the Portals." *Id.* ¶ 66. These screenshots contain snippets of code, URL strings, DeVry website addresses, and standalone words like "assignment[,]" "grades[,]" and a single Plaintiff's name. *Id.* at 17–20.

Plaintiffs also assert "numerous" conclusory injuries, "including: (i) invasion of privacy; (ii) lack of trust in communicating with educational providers; (iii) emotional distress and heightened concerns related to the release of Sensitive Information to third parties, (iv) loss of benefit of the bargain; (v) diminution of value of the Sensitive Information; (vi) statutory damages; and (vii) continued and ongoing risk to their Sensitive Information." *Id.* ¶¶ 13, 80–84. DeVry denies Plaintiffs' allegations and denies that it has engaged in any wrongdoing.

**B. DeVry's Privacy Policy and Terms of Service**

DeVry's Portals are governed by its Privacy Policy ("Privacy Policy") and Terms of Service ("TOS"), which Plaintiffs incorporate by reference into the Complaint's allegations

(attached as **Exhibit A** and **Exhibit B**, respectively), and which the Court may therefore consider as matters central to Plaintiffs' claims or not subject to reasonable dispute.[1]

DeVry's Privacy Policy and TOS, to which Plaintiffs and the putative class members consent as a requirement for access to the Portals, transparently explain the categories of information DeVry collects, how and for what purposes that information is used, and under which circumstances the data may be shared. The Privacy Policy section titled "Personal Information We Collect From You" lists the specific "types of personal information [DeVry] may collect[,]" and includes "Identifiers" (e.g. full name, street address, email address, phone numbers, Social Security number, and other personal identifiers) and "Educational Information" (e.g. degree program, educational records, education history, credits, course assignments, grades, academic performance, and other enrollment-related information). *See* Ex. A.

DeVry's Privacy Policy discloses DeVry's use of "Cookies," and, in a separate section titled "Google Analytics," plainly states:

> We use third party cookies provided by Google Analytics to assist us in better understanding our website visitors. These cookies collect IP address and usage data, such as the length of time a user spends on a page, the pages a user visits, and the websites a user visits before and after visiting our website . . . (*Id.*).

The Privacy Policy section titled "Personal Information Sold or Shared" further states:

> In the last twelve months, the DeVry Alumni Association has sold Directory Information (as defined and permitted under the Family Educational Rights and Privacy Act (FERPA) and as disclosed in our **FERPA policy**) to affiliate partners who provide special offers to our alumni. Directory Information contains non-sensitive Identifiers such as name and contact information. We have shared personal information in the past twelve months with

[1] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). Plaintiffs' allegations reference DeVry's "policies" including its "privacy policies" in the Complaint, and identify DeVry's disclosures under and compliance with these policies as central to Plaintiffs' claims. *See* Compl. ¶¶ 111(h), 117(c). The Court may also take judicial notice of these materials as facts not subject to reasonable dispute. *See Goplin v. WeConnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018) (taking judicial notice of website contents); *Hepp v. Ultra Green Energy Servs., LLC*, No. 13 C 4692, 2016 WL 1073070, at *2 (N.D. Ill. Mar. 18, 2016) (taking judicial notice of archived version of website).

> our third party advertising partners to serve ads to you about our products and services as you browse the Internet. . . You can opt of sharing through the Do Not Sell or Share My Personal Information link. (*Id.*).

DeVry's FERPA policy, incorporated in the Privacy Policy, is included in DeVry's Online Annual Disclosure (attached as **Exhibit C**) and outlines "Student Rights Under FERPA[.]" It contains a "Directory Information" section that states, in pertinent part:

> The Family Educational Rights and Privacy Act (FERPA) designates certain student information as "Directory Information" and gives the institution the right to disclose such information without having to ask students' permission. The items listed below as "Directory Information" may be released for any purpose at the discretion of the institution. Under the provisions of FERPA, students have the right to withhold the disclosure of any or all of the categories of information listed below. The following information will be released unless students specifically request that their information be withheld:
>
> - Directory Information: Name, address, telephone number, email address, date and place of birth, dates of attendance, previous institution(s) attended, major field of study (program), enrollment status, degrees and awards, past and present participation in officially recognized activities. (Ex. C.).

## LEGAL STANDARD

When a defendant moves to dismiss under Rule 12(b)(1) and asserts Rule 12(b)(6) grounds, the Court should address the jurisdictional challenge first. *Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

A motion under Rule 12(b)(1) tests the Complaint's sufficiency, not its merits. The court accepts well-pleaded factual allegations and draws reasonable inferences in the plaintiff's favor. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014) (quoting *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002)). The plaintiff "bears the burden of establishing that the jurisdictional requirements have been met." *Id.* at 588–89. This Court may also consider any evidence submitted on the issue and resolve factual disputes to determine whether subject matter jurisdiction exists. *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008); *see also Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019).

Under Rule 12(b)(6), dismissal is appropriate when the complaint fails to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a)(2) requires a short and plain statement to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. A claim is plausible only if it alleges sufficient factual content to permit a reasonable inference of liability. *Iqbal*, 556 U.S. at 678; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). A complaint that lacks sufficient facts to cross the line "from conceivable to plausible" should be dismissed. *Twombl*y, 550 U.S. at 570.

## ARGUMENT

### I. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(B)(1).

Plaintiff's Complaint should be dismissed for lack of Article III standing. Article III, § 2 of the U.S. Constitution limits federal jurisdiction to cases where a plaintiff has standing, a "personal stake" in the case and its outcome. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *U.S. Food & Drug Admin. v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024). Standing requires three elements: (1) an injury-in-fact, (2) caused by the defendant, (3) that would likely be redressed by judicial action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[P]laintiff bears the burden of establishing the elements of Article III standing." *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 528 (7th Cir. 2024) (citing *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015)). In putative class actions, named plaintiffs must demonstrate "they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Plaintiffs do not allege the first element of injury-in-fact. To establish that element, a plaintiff must show an invasion of a legally protected interest that is "'concrete and particularized'

and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan,* 504 U.S. at 560 n.1). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340 (citing *Black's Law Dictionary* 479 (9th ed. 2009)). As used, "concrete" means a real injury and not abstract. *Id.* (citing *Webster's Third New International Dictionary* 472 (1971); *Random House Dictionary of the English Language* 305 (1967)). Article III standing requires a concrete injury "even in the context of a statutory violation" and a "bare procedural violation, divorced from any concrete harm" cannot satisfy the injury-in-fact requirement. *Id.* at 341.

Plaintiffs have alleged no concrete harm. *First*, Plaintiffs generically assert an "invasion of privacy" without further elaboration as to how the putative invasion injured Plaintiffs. *See* Compl. ¶¶ 13, 119–130. Absent a concrete "theory of injury[,]" such "generic analogies 'to a tortious invasion of privacy' do not suffice to confer standing[.]" *Lisota v. Heartland Dental, LLC*, No. 25 CV 7518, 2026 WL 91667, at *2 (N.D. Ill. Jan. 13, 2026).

*Second*, Plaintiffs' asserted "lack of trust" and "heightened concerns" of a "continued and ongoing risk to their Sensitive Information," is too speculative to confer standing. Compl. ¶¶ 6, 13, 92. Such allegations based on "fears of hypothetical future harm that is not certainly impending," or "worry and anxiety," do not state the "concrete injury essential to standing." *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 978 (7th Cir. 2023), *reh'g denied*, No. 22-1892, 2023 WL 6144390 (7th Cir. Sept. 20, 2023); *see Access Living of Metro. Chicago v. Uber Techs., Inc.,* 958 F.3d 604, 614 (7th Cir. 2020) (finding absence of "personalized experience" to support standing).

*Third*, Plaintiffs' asserted "loss of the benefit of the bargain," "diminution [in] value" of their Sensitive Information, and "statutory damages" due to the alleged unauthorized disclosure,

are not concrete harms conferring standing. Compl. ¶¶ 13, 80–84. Because Plaintiffs do not allege any quantifiable economic loss, nor that DeVry monetized Plaintiffs' educational records, nor that Plaintiffs would have been able to sell their Sensitive Information for any market price, their allegations are "too speculative" to confer standing. *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 849 (N.D. Ill. 2020) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 401 (2013)).

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6).

### A. Plaintiffs Fail to State a Claim for Violation of the ECPA (Count V).

Count V asserts a claim for violation of the ECPA, but that claim is deficient under the statute's party communication exclusion, which states that "[a]n interceptor isn't liable if they are 'a party to the communication or where one of the parties to the communication has given prior consent to such interception.'" *Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *4 (N.D. Ill. Aug. 8, 2025) (citing 18 U.S.C. § 2511(2)(d)); *see also Kurowski v. Rush Sys. for Health,* 659 F. Supp. 3d 931, 938–39 (N.D. Ill. 2023); *Doe v. Genesis Health Sys.*, No. 4:23-CV-04209-JEH, 2025 WL 1000192, at *8 (C.D. Ill. Mar. 18, 2025); *Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *3 (W.D. Tex. June 27, 2024). The exclusion bars liability unless "such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). The "'defendant must have the intent to use the illicit recording to commit a tort or crime beyond the act of recording itself.'" *Nguyen*, 2025 WL 2299573, at *4 (citing *Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010)).

#### 1. DeVry Is a Party to the Communications at Issue.

Here, Plaintiffs allege that the purportedly intercepted communications occurred on DeVry's Portals. Compl. ¶¶ 64–70. Accordingly, DeVry was "a party to the communication" and

is not liable for intercepting its own communications, unless it acted for the purpose of committing a crime or tort. 18 U.S.C. § 2511(2)(d). Plaintiffs attempt to draw a false distinction, asserting that DeVry "was a participant in Plaintiffs' and Class Members' communications about their Sensitive Information on the Portals[,]" but "not a party to the communication based on its unauthorized duplication and transmission of communications with Plaintiffs and the Class." Compl. ¶¶ 174, 176. That is a distinction without a difference. If "unauthorized duplication and transmission of communications" negated one's status as a "party to the communication," the crime-tort exception would be rendered meaningless, as it identifies the exclusive circumstances under which an "unauthorized duplication and transmission" may overcome a participant's exclusion from liability, i.e., when they act "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Courts "will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous." *United States v. Misc. Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (citation omitted).

**2. Plaintiffs Have Failed to Plead a Criminal or Tortious Purpose.**

Plaintiffs seek to invoke DeVry's alleged violation of FERPA, the IEA, or common law torts as grounds for the crime-tort exception. *See* Compl. ¶ 175. That attempt fails because, even if Plaintiffs had alleged a violation of one of these statutes or torts as an outcome of DeVry's asserted conduct (though they have not), Plaintiffs have not plausibly alleged that DeVry acted "***for the purpose*** of committing" one or more of these asserted criminal or tortious acts. 18 U.S.C § 2511(2)(d) (emphasis added). The focus "is not upon whether the interception itself violated another law," but rather "whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999) (citations omitted). The exception "is inapplicable [if] a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"; a "primary motivation, or a determining factor" in

intercepting Plaintiff's communications must be "tortious or criminal." *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

Here, Plaintiffs concede DeVry placed the Google Pixel to "receive access to advertising and marketing analytics services[.]" Compl. ¶ 78. That commercial purpose does not meet the requirement of a criminal or tortious purpose. *See Goulart v. Cape Cod Healthcare, Inc.*, No. 25-10445-RGS, 2025 WL 1745732, at *3 (D. Mass. June 24, 2025) (holding complaint "fails to plausibly allege that" a "'primary motivation' or 'determinative factor' in disclosing plaintiffs' personal health information" through tracking technologies "was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience"); *Genesis Health Sys.*, 2026 WL 1000192, at *9 ("By Plaintiff's own account, the 'trackers' were 'used by the Defendant to benefit Genesis Health and its marketing and advertising purposes,' not ***for the purpose of*** knowingly committing a violation of the HIPAA") (emphasis added).

**3. FERPA Is Not a Crime or Tort, and Plaintiffs Have Not Alleged a Violation of FERPA.**

Plaintiffs' invocation of the crime-tort exception additionally fails because Plaintiffs do not allege the commission of a predicate tortious or criminal act. Plaintiffs' failure to assert violations of the IEA and common law torts is addressed in §§ II.B-C *infra*. Plaintiffs also attempt to assert a violation of FERPA to support the exception. *See* Compl. ¶¶ 2, 175. That allegation fails because violation of FERPA is not a "criminal or tortious act," and the "Sensitive Information" allegedly disclosed is not a FERPA-protected education record.

FERPA is a federal funding provision, not a criminal statute. It states "[n]o funds shall be made available" to an educational institution failing to comply with its terms. 20 U.S.C. § 1232g. It contains no criminal provisions. *See id.* FERPA also does not confer any statutory rights sounding in tort; Congress enacted the statute "under its spending power to condition the receipt

of federal funds on certain requirements" relating to the disclosure of student educational records, and its provisions "create no personal rights to enforce[.]" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276–78 (2002); *see also id.* at 279 ("[W]e have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights."). Put simply, "FERPA does not authorize suits by private persons, as opposed to the federal government." *Slovinec v. DePaul Univ.*, 332 F.3d 1068, 1069 (7th Cir. 2003). Plaintiffs cannot use the ECPA's crime-tort exception to create such a non-existent private right to enforce FERPA.

Regardless, FERPA only protects "personally identifiable information in education records ***other than directory information***." *Gonzaga Univ.*, 536 U.S. at 289 (emphasis added). "Education Records" are defined as "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution[.]" 20 U.S.C. § 1232g(a)(4)(A); 34 C.F.R. § 99.3. By contrast, "Directory Information" includes a "student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, decrees and awards received, and the most recent previous educational agency or institution attended by the student." 20 U.S.C. 1232g(a)(5)(A); 34 C.F.R. § 99.3. Plaintiffs' allegations make clear that what they call "Sensitive Information," including "full names, registration status, course names and numbers," and the information reflected in Plaintiffs' screenshots, is Directory Information. *See* Compl. ¶¶ 6, 65–66. The Complaint contains no allegations that DeVry's alleged use of Tracking Technologies resulted in the disclosure of any Education Records falling outside the definition of Directory Information. *See id.* Because "[P]laintiffs have not adequately alleged that [DeVry] disclosed their . . . protected information . . . the crime-tort exception does not apply and the one-party exception precludes [Defendant] from

being liable for a direct violation[.]"*Nguyen et al. v. Abbott Lab'ys, Inc.*,No. 24 CV 8289, 2026 WL 579206, at *6 (N.D. Ill. Mar. 2, 2026).

Although Plaintiffs seek to overcome this deficiency by alleging that the information transmitted "include[d] a unique student identifier number" (*id.* ¶ 66), that does not allege a FERPA violation. A "unique personal identifier used by a student for the purposes of accessing or communicating in electronic systems" is Directory Information "if the identifier cannot be used to gain access to education records except when used in conjunction with one or more factors that authenticate the user's identity, such as a personal identification number (PIN), password or other factor known or possessed only by the authorized user." 34 C.F.R. § 99.3. Plaintiffs have not alleged that their student identifier numbers could be used to access their education records without an additional authenticator, meaning they are Directory Information. *Id.*

**B. Plaintiffs Fail to State a Claim for Violation of the IEA (Count VI).**

Count VI of the Complaint attempts to assert a claim under Section 14-2(a)(2) of the IEA. *See* Compl. ¶ 186. But that provision is limited to the recording of "private conversation[s]," stating: "A person commits eavesdropping when he or she knowingly and intentionally … (2) Uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any ***private conversation*** to which he or she is a party unless he or she does so with the consent of all other parties to the ***private conversation***." 720 ILCS 5/14-2(a)(2) (emphases added). Plaintiffs alleges that DeVry "was and continues to be an eavesdropper . . . because it operated or participated in the operation of an eavesdropping device[,] . . .[and] utilized the Tracking Tools to intercept the content of Plaintiffs' . . . ***private electronic communications*** on the Portals . . . [without] consent . . . in violation of 720 ILCS 5/14-2(a)(2)." Compl. ¶193 (emphasis added). That allegation improperly attempts to rewrite the IEA, substituting "private electronic communications" for "private conversation."

Section 14-2(a)(2) of the IEA is limited to "private conversation[s]," defined as "***oral communication*** between 2 or more persons, whether in person or transmitted between the parties by wire or other means." 720 ILCS 5/14-1(d) (emphasis added). Thus, liability under this provision requires a private conversation, and there can be no violation unless the plaintiff alleges that the parties engaged in oral communications. Plaintiffs have alleged no such oral communications, just the purported interception of "electronic communications." Compl. ¶¶ 192–93.

The IEA separately addresses "private electronic communications" in Section 14-2(a)(3), which prohibits the interception only of "any private electronic communication ***to which [defendant] is not a party*** unless he or she does so with the consent of all parties to the private electronic communication." 720 ILCS 5/14-(2)(a)(3) (emphasis added). The statute separately defines "private electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system[.]" 720 ILCS 5/14-1(e). "The difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data . . . at issue here." *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *4 (N.D. Ill. Sept. 9, 2024); *see also Mayer v. Midwest Physician Admin. Servs., LLC*, No. 23-CV-3132, 2025 WL 963779, at *4 (N.D. Ill. Mar. 31, 2025). Where, as here, Plaintiffs "complain about typed communications and not oral ones, they have not alleged a Section 14-2(a)(2) violation[.]" *Mayer*, 2025 WL 963779, at *4 (dismissing IEA claim because alleged interception of plaintiffs' information via pixel technology failed to meet Section 14-2(a)(2)'s oral communication requirement); *see also Aspen Dental*, 2024 WL 4119153, at *4 (same).

Plaintiffs also cannot state a claim under Section 14-2(a)(3), because DeVry is a party to

the "private electronic communications" between Plaintiffs and DeVry. Compl. ¶¶ 64–70. That excludes DeVry from liability for intercepting private electronic communications. *See Zak v. Bose Corp.*, No. 17-cv-02928, 2020 WL 2762552, at *3 (N.D. Ill. May 27, 2020) (dismissing amended claim under IEA despite allegations that defendant "redirect[ed] communications" to a third party because this did "not change the fact[]" that defendant "was a party to the communications").

### C. Plaintiffs Fail to Adequately Plead Facts to Support Their Asserted Illinois Common Claims (Counts I to IV).

#### 1. Plaintiffs Do Not State a Claim for Invasion of Privacy (Count I)

The Court should dismiss Plaintiffs' common law invasion of privacy claim because "[b]eyond the general throughline of an invasion of privacy, [Plaintiffs'] complaint does not clarify [their] theory of injury." *Lisota*, 2026 WL 91667, at *2. Assuming Plaintiffs' claim is predicated on a theory of intrusion upon seclusion, to prevail under Illinois law, Plaintiffs must prove "(1) an unauthorized intrusion or prying into a plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matters upon which the intrusion occurred were private; and (4) the intrusion caused anguish and suffering." *Vega v. Chi. Park Dist.*, 958 F. Supp. 2d 943, 959 (N.D. Ill. 2013); *see also Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530 ¶ 35 (adopting Restatement (Second) of Torts § 652).

Plaintiffs assert these elements in bare conclusory fashion (Compl. ¶¶ 121–25), but fail to allege plausible facts to support an invasion of privacy claim. *First*, DeVry's alleged "disclosures of private personal information do not support a claim for unauthorized intrusion[,]" because "the basis of the tort is not publication or publicity." *Dinerstein v. Google, Ltd. Liab. Co.*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (quoting *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004); *see also Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417, (1989)). Because Plaintiffs concede that their asserted injuries arise from "Defendant's

disclosure and publicization," rather than an act of prying (*see* Compl. ¶ 125), "Plaintiffs have pleaded themselves out of court." *Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (granting defendant's motion to dismiss claim for intrusion upon seclusion because plaintiffs' injuries flowed from publication, not an intrusive act).

*Second*, Plaintiffs cannot prove that the matter intruded upon was private because Plaintiffs freely navigated to and "voluntarily utilized" DeVry's Portals, "thereby volunteer[ing] the information which [they] assert[] was wrongfully disclosed." *Hannant v. Culbertson*, No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *15 (C.D. Ill. Aug. 20, 2025).

*Third*, Plaintiffs do not plausibly allege DeVry's conduct caused Plaintiffs to experience anguish, suffering, harm, or injury, because Plaintiffs' injuries, if any, concern "a subsequent disclosure of information, not a wrongful initial acquisition of information," and "[c]ourts in Illinois have routinely found that such subsequent disclosures cannot support an intrusion upon seclusion claim." *Hannant*, 2025 WL 2413894, at *15; *See Kurowski*, 659 F. Supp. 3d at 849 (dismissing the invasion of privacy claim because the Court concluded that "the allegedly harmful intrusion here, if any, was accomplished by third parties"); *Juenger v. Deaconess Health Sys., Inc.*, No. 3:24-CV-2332-NJR, 2025 WL 2780221 (S.D. Ill. Sept. 30, 2025) (dismissing invasion of privacy claim because the defendants were the intended recipients of the information in question and the harm flowed from the alleged disclosure rather than an intrusion).

**2. Plaintiffs Do Not State a Claim for Negligence (Count II)**

The Court should dismiss Plaintiffs' negligence claim because Plaintiffs have not alleged the requisite elements that "(1) defendant owed a duty of care to plaintiff, (2) defendant breached that duty; and (3) defendant's breach was the proximate cause of plaintiff's injuries." *Cosgrove v. Commonwealth Edison Co.,* 315 Ill. App. 3d 651, 654 (2d Dist. 2000). Again, Plaintiffs assert

these elements only in conclusory fashion, without any factual allegations plausibly setting forth the existence of a duty, its breach, or injury to Plaintiffs. *See* Compl. ¶¶ 133–37.

Plaintiffs have not alleged a common law duty on the part of DeVry not to disclose the putative "Sensitive Information" at issue, because, as set forth in §§ II.A.3 and § II.D, (1) DeVry does not owe a duty to safeguard Directory Information, and (2) DeVry's Privacy Policy disclosed its use of Cookies and Google Analytics and its sale of Directory Information for marketing purposes. Thus, Plaintiffs have not alleged a duty or a breach. *See Nguyen*, 2026 WL 579206, at *6 (finding plaintiffs failed to allege a breach of duty where "plaintiffs fail[ed] to adequately plead the [Defendant] disclosed HIPAA-protected information to Meta or Google[,]" because the allegedly disclosed information was "not the kind of nonpublic personal information the . . . Act seeks to protect."). Further, "Illinois has not recognized an independent common law duty to safeguard personal information." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 817 (7th Cir. 2018).

Plaintiffs also have not alleged that DeVry's conduct caused a cognizable injury on which Plaintiffs may recover in negligence. Under the Illinois *Moorman* doctrine, Plaintiffs' recovery for economic loss must sound in contract, "and thus [Plaintiffs] may not pursue damages in … negligence" for their economic losses. *Genesis Health Sys.*, 2026 WL 1000192, at *11 (citing *Moorman Manf. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1997)). Under the *Moorman* doctrine, "tort law affords the proper remedy for loss arising from personal injury or damages to one's property, whereas contract law and the Uniform Commercial Code provide the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property." *Id.* (quoting *In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (internal citation omitted)). "To determine whether the *Moorman* doctrine bars

tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567–68 (7th Cir. 2012) (citing *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 693 (7th Cir. 2011)). Here, the "basic legal relation between a student and a private university or college is contractual in nature[.]" *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009) (quoting *Ross v. Creighton Univ.,* 957 F.2d 410, 416 (7th Cir. 1992)). Indeed, Plaintiffs assert a claim sounding in implied contract (although they fail to plead facts to support their claim, *see* § II.C.3 *infra*). Compl. ¶¶ 140–47. The *Moorman* doctrine thus "precludes the recovery of tort damages, an essential element of a negligence claim." *Genesis Health Sys.*, 2026 WL 1000192, at *12.

### 3. Plaintiffs Do Not State a Claim for Breach of Implied Contract (Count III)

Plaintiffs' breach of implied contract claim fails to plead facts plausibly supporting the terms of the asserted implied contract or contractual damages. "In Illinois, in order to prove an implied contract, the party asserting the contract must show the same elements as an express contract, as well as a meeting of the minds and a mutual intent to contract." *New v. Verizon Commc'ns, Inc.*, 635 F. Supp. 2d 773, 782–83 (N.D. Ill. 2008); *see also Matthews v. Chicago Transit Auth.*, 2016 IL 117638, ¶ 93 (2016).

Plaintiffs assert a broad implied contractual duty "to safeguard and not disclose the[ir] Sensitive Information without consent," with conclusory assertions of breach and damages. Compl. ¶¶ 141–45. Plaintiffs' generic allegations do not support a breach of implied contract.

*First*, Plaintiffs do not sufficiently plead the terms of the implied contract or a meeting of the minds. *See iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶ 33 (dismissing implied contract claim because even "assum[ing] that a contractual relationship can be implied from such conduct, there is no indication in the allegations of plaintiff's first amended

complaint, other than conclusory statements, that there was a 'meeting of the minds'").

*Second*, Plaintiffs "fail[] to sufficiently allege actual damages, as emotional damages, the risk of future harm, and the loss of privacy are by definition, not pecuniary in nature." *Juenger*, 2025 WL 2780221, at *5 (citing *M.C. v. E. Side Health Dist.*, No. 3:24-CV-01336, 2025 WL 435992, at *4 (S.D. Ill. Feb. 7, 2025)); *see also Hannant*, 2025 WL 2413894, at *16 (dismissing implied contract claim because alleged damages of emotional harms, overpayment, diminution in value of plaintiff's data, privacy harms, increased risk of future harm, and advertising-usage harms did not "sufficiently allege actual monetary damages to support her breach of implied contract").

*Third*, Plaintiffs' "alleged diminution in the value of [their] personal information … cannot sustain a contract action because it is entirely speculative." *Juenger*, 2025 WL 2780221, at *5 (citing *Flores v. Aon Corp.,* 2023 IL App (1st) 230140 ¶14 (2023)).

*Fourth*, Illinois law has not recognized a "property right" in "personal information." *Doe v. Deaconess Illinois Union Cty. Hosp.*, No. 3:24-cv-02284, 2025 WL 2771415, at *5 (S.D. Ill. Sept. 29, 2025) (quoting *Petta v. Christie Bus. Holding Co., P.C.*, 2023 IL App (5th) 220742, ¶ 17). Thus, Plaintiffs' allegation of diminished personal data value is not viable under Illinois law.

*Fifth,* in the data privacy context, Illinois courts have rejected Plaintiffs' assertion of damages predicated on the claim that they "would not have entrusted Defendant with their Sensitive Information in the absence of an implied contract . . . obligating Defendant to not disclose Sensitive Information without consent." Compl. ¶ 143. *See Lewert v. P.F. Chang's China Bistro, Inc.,* 819 F.3d 963, 968 (7th Cir. 2016) (rejecting plaintiffs' damages theory seeking a refund of the cost of their meals predicated on the allegation that they would not have dined at defendant's restaurant had they known of its poor data security) (citing *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 694–95 (7th Cir. 2015)).

**4. Plaintiffs Do Not State a Claim for Unjust Enrichment (Count IV)**

Plaintiffs' unjust enrichment claim fails to state a separate claim against DeVry and fails to allege the elements of an unjust enrichment remedy. Plaintiffs assert in broad strokes that they "conferred a monetary benefit" on DeVry by sharing an "enrollment payment" and "Sensitive Information" for "educational services," and DeVry "exchang[ed]" this benefit "for marketing and advertising services[.]" Compl. ¶¶ 150–54. That claim fails for two reasons.

*First*, Plaintiffs' claim is facially defective because "[u]njust enrichment is not a separate cause of action under Illinois law." *Horist v. Sudler*, 941 F.3d 274, 281 (7th Cir. 2019). Rather, it is a "theory of recovery or restitution" based on alleged "improper conduct" that "will form the basis of another claim against the defendant in tort, contract, or statute." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because the claim "rests on the same improper conduct alleged in another claim," it is "tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* at 517; *see* also *Juenger*, 2025 WL 2780221, at *6 (dismissing unjust enrichment "as a standalone action"); *Hannant*, 2025 WL 2413894, at *17 (dismissing unjust enrichment claim because it hinged on viability of other claims); *Aspen Dental*, 2024 WL 4119153, at *27 (same); *Dinerstein*, 484 F. Supp. 3d at 595 (same).

*Second*, to pursue an unjust enrichment remedy, Plaintiffs must plausibly allege that DeVry has unjustly retained a benefit to Plaintiffs' detriment in violation of fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Mere receipt or transmittal of Plaintiffs' data does not suffice to plead such a retention of benefit, because Illinois courts have "routinely rejected the 'proposition that an individual's personal identifying information has an independent monetary value.'" *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 592 (N.D. Ill. 2022) (quoting *Fero v.*

*Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017)).

**D. Plaintiffs Consented to the Collection of Their Data.**

Lastly, the Court should dismiss Plaintiffs' Complaint in its entirety because Plaintiffs consented to DeVry's Privacy Policy, which put Plaintiffs on notice of DeVry's data collection practices. By accepting DeVry's TOS and incorporated Privacy Policy, Plaintiffs acknowledged and accepted DeVry's disclosure of (1) its collection of Identifiers and Educational Information, (2) its use of Cookies and Google Analytics, and (3) its sale of Directory Information to serve ads regarding products and services. *See* Stmt. of Facts § A *supra*; Exs. A-C.

Because DeVry's Privacy Policy unambiguously discloses its use of the same tracking tools and the collection of the same data Plaintiffs complain of, it is apparent on the face of the Complaint and its incorporated policies that "a 'reasonable user viewing [DeVry's] disclosures would . . . have concluded that they unambiguously disclosed the data collection at issue.'" *In re TikTok, Inc. In-App Browser Priv. Litig*., No. 24 C 2110, 2024 WL 4367849, at *8 (N.D. Ill. Oct. 1, 2024) (quoting *Calhoun v. Google*, *LLC*, 113 F.4th 1141, 1147–48 (9th Cir. 2024)). Because a reasonable user of DeVry's Portals was on reasonable notice that their Directory Information and other data would be tracked and shared with third parties, Plaintiffs' claims are barred.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant DeVry respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice in its entirety for lack of standing and failure to assert any claim upon which relief can be granted, and for such other and further relief as this Court may deem equitable and just.

Dated: March 9, 2026

Respectfully submitted,

DEVRY UNIVERSITY, INC.

/s/ Gregory E. Ostfeld
*Attorney for DeVry University, Inc*

Gregory E. Ostfeld (ARDC #6257163)
Nair M. Banks III (ARDC #6352628)
**GREENBERG TRAURIG, LLP**
360 North Green Street, Suite 1300
Chicago, Illinois 60607
(312) 456-8400
OstfeldG@gtlaw.com
Nair.Banks@gtlaw.com

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney, hereby certify that I caused a true and correct copy of the foregoing **DEFENDANT DEVRY UNIVERSITY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT** to be served by electronic transmission via ECF upon all attorneys of record on this 9th day of March 2026.

/s/ Gregory E. Ostfeld
*Attorney for DeVry University, Inc.*