**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| **ALCOLA EDWARDS**, **BAKEEMA BROWN**, and **PARIS LOUIS**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**DEVRY UNIVERSITY, INC.**,<br><br>Defendant. | Case No. 1:25-cv-15477<br><br>Hon. John F. Kness |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT DEVRY UNIVERSITY INC.'S MOTION TO DISMISS PLANTIFFS' CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS


I. INTRODUCTION ... 1

II. STATEMENT OF FACTS ... 2

III. STANDARD OF LAW ... 2

IV. ARGUMENT ... 3

A. PLAINTIFFS HAVE ARTICLE III STANDING. ... 3

B. PLAINTIFFS' ECPA CLAIM IS WELL-PLED. ... 5

i. Plaintiffs' allegations satisfy the ECPA's crime-tort exception. ... 5

ii. DeVry disclosed Plaintiffs' education records to unauthorized third parties in violation of FERPA. ... 6

iii. DeVry's Violation of FERPA Satisfies the Crime-Tort Exception. ... 7

iv. DeVry's financial motive does not insulate it from liability under the ECPA. ... 9

C. PLAINTIFFS' IEA CLAIM IS WELL-PLED. ... 11

D. PLAINTIFFS PROPERLY PLEAD A CLAIM FOR INVASION OF PRIVACY BASED ON THE ELEMENTS OF PUBLICITY GIVEN TO PRIVATE LIFE. ... 12

E. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED. ... 14

F. PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED CONTRACT. 16

G. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL PLED. ... 18

H. PLAINTIFFS DID NOT CONSENT TO DEVRY'S UNAUTHORIZED DISCLOSURES OF THEIR SENSITIVE INFORMATION. ... 19

V. CONCLUSION ... 20

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 U.S. Dist. LEXIS 161090 (N.D. Ill. 2024) .......... 8, 9, 14, 18

*Am. All. for Equal Rts. v. A.B.A.*,
2026 U.S. Dist. LEXIS 10904 (N.D. Ill. 2026) .......... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 555 (2007) .......... 3

*Brahm v. Hosp. Sisters Health Sys.*,
2024 U.S. Dist. LEXIS 114827 (W.D. Wis. 2024) .......... 13

*Cherkin v. PowerSchool Holdings, Inc.*,
2025 U.S. Dist. LEXIS 48424 (N.D. Cal. 2025) .......... 13

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,
159 Ill. 2d 137 (Ill. 1994) .......... 15

*Conley* v. *Gibson*,
355 U.S. 41 (1957) .......... 3

*Dawson v. Univ. of Phx., Inc.*,
2026 U.S. Dist. LEXIS 6299 (N.D. Ill. 2026) .......... 8, 11, 17

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) .......... 4

*Dinerstein v. Google, Ltd. Liab. Co.*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 18

*Doe v. Fertility Ctrs. of Ill.*,
2022 U.S. Dist. LEXIS 59145 (N.D. Ill. 2022) .......... 18

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
980 F.3d 1117 (7th Cir. 2020) .......... 19

*Ewing v. Med-1 Sols., LLC*,
24 F.4th 1146 (7th Cir. 2022) .......... 4

*Gadelhak v. AT&T Servs.*,
950 F.3d 458 (7th Cir. 2020) .......... 4

*Hannant v. Sarah D. Culbertson Mem'l Hosp.*,
2025 U.S. Dist. LEXIS 161412 (C.D. Ill. 2025) ....................18

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993)....................1

*Haywood v. Massage Envy Franchising, LLC*,
887 F.3d 329 (7th Cir. 2018)....................3

*Horist v. Sudler & Co.*,
941 F.3d 274 (7th Cir. 2019)....................18

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)....................13

*In re Gallagher Data Breach Ligation*,
631 F. Supp. 3d 573 (N.D. Ill. 2022)....................14

*In re Kemper Sports Mgmt. Data Breach Litig.,*
2026 U.S. Dist. LEXIS 749 (N.D. Ill. 2026) ....................14

*In re Lurie Child.'s Hosp. Data Sec. Litig.*,
2025 U.S. Dist. LEXIS 190839 (N.D. Ill. 2025)....................16

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022)....................1

*In re Mondelez Data Breach Litig.*,
2024 U.S. Dist. LEXIS 97948 (N.D. Ill. 2024) ....................14

*Johnson v. K mart Corp.*,
311 Ill. App. 3d 573 (2000) ....................12

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023)....................12

*L.C. v. Fertility Ctrs. of Ill., PLLC*,
2025 U.S. Dist. LEXIS 252774 (N.D. Ill. 2025)....................4

*Lax v. Mayorkas*,
20 F.4th 1178 (7th Cir. 2021) ....................3

*Lewert v. P.F. Chang's China Bistro, Inc.*,
819 F.3d 963 (7th Cir. 2016)....................17

*Lisota v. Heartland Dental, LLC*,
2026 U.S. Dist. LEXIS 6294 (N.D. Ill. 2026) .................... 4, 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................3

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)....................3

*M.C. v. E. Side Health Dist.*,
2025 LX 109404 (S.D. Ill. Feb. 7, 2025)....................17

*Mayer v. Midwest Physician Admin. Servs., LLC*,
N2025 U.S. Dist. LEXIS 60486 (N.D. Ill. 2025)....................8

*McClain v. Capital Vision Servs., LLC*,
2026 U.S. Dist. LEXIS 52341 (N.D. Ill. 2026)....................15

*McLaughlin v. Taylor Univ.*,
2024 U.S. Dist. LEXIS 172249 (N.D. Ind. 2024)....................17

*Nabozny v. Optio Sols. LLC*,
84 F.4th 731 (7th Cir. 2023)....................4

*Nazzaro v. Tecta Am. Corp.*,
2025 U.S. Dist. LEXIS 175554 (N.D. Ill. 2025)....................15

*Olson v. Ferrara Candy Co.*,
2025 IL App (1st) 241126 (Ill. June 25, 2025)....................15, 16

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021)....................5

*Q.J. v. Powerschool Holdings, LLC*,
2025 U.S. Dist. LEXIS 161612 (N.D. Ill. 2025)....................8

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)....................10

*R.S. v. Prime Healthcare Servs*,
2025 U.S. Dist. LEXIS 6338 (C.D. Cal. 2025)....................8, 10

*Reed v. MRS BPO, L.L.C.*,
2022 U.S. Dist. LEXIS 156394 (N.D. Ill. 2022)....................12

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015)....................17

*Rodriguez v. ByteDance, Inc.*,
2025 U.S. Dist. LEXIS 37355 (N.D. Ill. 2025)....................19

*Roper v. Rise Interactive Media & Analytics, LLC*,
2023 U.S. Dist. LEXIS 201955 (N.D. Ill. 2023) ........ 4

*Smith v. Loyola Univ. Med. Ctr.*,
2024 U.S. Dist. LEXIS 119995 (N.D. Ill. 2024) ........ 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........ 3, 4

*Stein v. Edward-Elmhurst Health*,
2025 U.S. Dist. LEXIS 31273 (N.D. Ill. 2025) ........ 8, 9

*Theys v. Dental Intel., Inc.*,
2026 U.S. Dist. LEXIS 46654 (N.D. Ill. 2026) ........ 8, 12, 16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........ 4

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ........ 15

*Wittmeyer v. Heartland All. for Hum. Needs & Rights*,
2024 U.S. Dist. LEXIS 8803 (N.D. Ill. 2024) ........ 14, 15

*Wood v. Sec. Credit Servs.*,
126 F.4th 1303 (7th Cir. 2025) ........ 4

**Statutes**

105 Ill. Comp. Stat. § 10/2 ........ 8

105 Ill. Comp. Stat. § 10/6 ........ 8

105 Ill. Comp. Stat. § 10/9 ........ 8

18 U.S.C. § 2511 ........ 5

20 U.S.C. § 1232g ........ 6

720 ILCS 5/14-2 ........ 10

815 Ill. Comp. Stat. Ann. 530/45 ........ 13

**Other Authorities**

Restatement (Second) of Torts ........ 12

## I. INTRODUCTION

"The desire for privacy. . . is a mysterious but deep fact about human personality. It deserves and in our society receives legal protection." *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1229 (7th Cir. 1993). "And while privacy is important, it is also fragile: with a mere click of the mouse, one's personal information may be disseminated to the world. There is no way to undo a loss of privacy." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 804 (N.D. Cal. 2022). For more than fifty years, federal law has recognized that this need for privacy extends to a student's educational record. Thus, Defendant DeVry University, Inc. ("Defendant" or "DeVry") has a legal duty to safeguard its students' confidential educational records and academic information. Unfortunately, DeVry failed to satisfy that duty and instead allowed its students' private and sensitive personal information to be secretly funneled to commercial third party advertisers through the use of surreptitious online surveillance software (the "Tracking Tools"). This information was then commoditized by DeVry and digital advertising giants like Alphabet, Inc. ("Google") to serve hyper-targeted advertising to Plaintiffs through their Internet devices. Plaintiffs bring this action seeking recompense for these significant privacy violations.[1]

In its Motion to Dismiss, DeVry does not dispute the fact that it disclosed Plaintiffs' educational records to Google, the largest advertising entity in the world. *See* ECF No. 20 (the "Motion" or "Mot."), at 1-2. Instead, DeVry misconstrues nearly every allegation in the Complaint, including by misrepresenting the categories of information that Plaintiffs allege to have been disclosed by the Tracking Tools and misstating its legal obligations under federal privacy law. All of these arguments are wholly without merit. Plaintiffs allege that DeVry violated a well-recognized, federally-protected privacy right by disclosing their education records, including specific information pertaining to their entire course schedules, their requests for financial aid and their use of DeVry's online student portal, to unauthorized third parties. While DeVry characterizes this information as non-confidential

[1] Plaintiffs assert six causes of action: (i) violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511(1), *et seq.*; (ii) violations of the Illinois Eavesdropping Act ("IEA"), 720 ILCS 5/14, *et seq.*; (iii) invasion of privacy; (iv) negligence; (v) implied breach of contract; and (vi) unjust enrichment. *See generally*, Class Action Complaint, ECF No. 1 (the "Complaint" or "Compl.").

"directory information," both FERPA and the definition of directory information provided in DeVry's own FERPA Policy contradict this assertion. Accordingly, this Court should deny DeVry's Motion to Dismiss in its entirety.

## II. STATEMENT OF FACTS

DeVry is a private, for-profit university offering campus locations in 11 states and fully online programs nationwide. Compl. ¶ 3. Students enrolled at DeVry are required to use two online portals for administrative and course-related functions. *Id.* ¶ 4. First, the portal located at www.learn.devry.edu (the "Administrative Portal") is used for administrative functions such as checking registration and financial aid status. *Id.* Second, the portal located at www.devryu.instructure.com (the "Academic Portal" and, together with the Administrative Portal, the "Portals") is used to access course assignments, grades, and other course-specific functions. *Id.* Plaintiffs Alcola Edwards, Bakeema Brown, and Paris Louis (together, the "Plaintiffs") enrolled as DeVry students and routinely used the Portals while logged into their Google accounts. *Id.* ¶¶ 15-29. When they did so, Plaintiffs reasonably expected that their personal information and education records would remain confidential and not be shared with third parties for a commercial purpose. *Id.* ¶¶ 92, 146, 155. Unfortunately, they were not. Unbeknownst to Plaintiffs, DeVry installed the Tracking Tools on its Portals and its public-facing website, www.devry.edu (the "Website"), and configured these tools to collect and transmit sensitive, personally identifiable information ("PII") to unauthorized third parties, including Alphabet, Inc. ("Google") in exchange for enhanced marketing and analytics services. *Id.* ¶¶ 5, 68, 70, 78. These disclosures included highly confidential information, including students' full names, registration status, course names and numbers, information relating to financial aid requests, and other identifying information, transmitted to Google alongside specific lines of code linking the Sensitive Information to Plaintiffs' identities (collectively, the "Sensitive Information"). *Id.* ¶¶ 66-67, Fig. 1-4.

## III. STANDARD OF LAW

A Rule 12(b)(6) motion tests whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised "a right to relief above the

speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). A court must deny a motion to dismiss if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 555-56 (2007)).

## IV. ARGUMENT

### A. PLAINTIFFS HAVE ARTICLE III STANDING.

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). DeVry challenges only the first element of Article III standing, asserting that Plaintiffs cannot establish an injury in fact. *See* Mot. at 16. As explained below, courts routinely recognize that the unauthorized disclosure of sensitive, personally identifying information like that at issue here constitutes an injury in fact and Plaintiffs have thus satisfied the requirements of Article III.

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This is because, when evaluating a Rule 12(b) motion to dismiss, a court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (citing *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957)). To satisfy the "injury-in-fact requirement, the harm alleged must be concrete; that is, the injury must be real, not abstract." *Smith v. Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *8 (N.D. Ill. July 9, 2024). "[I]ntangible harms can . . . be concrete," such as "disclosure of private information" and "intrusion upon seclusion." *TransUnion*

*LLC v. Ramirez*, 594 U.S. 413, 425 (2021); *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023) ("Both tangible and intangible harms may fit the bill" for a concrete injury). While DeVry argues that Plaintiffs assert only a generic privacy injury, (Mot. at 7), "courts are permitted to look past 'bare invasion-of-privacy allegation[s]' and consider 'the relevant factual allegations' in the context of the four torts." *Lisota v. Heartland Dental, LLC*, 2026 U.S. Dist. LEXIS 6294, at *5 (N.D. Ill. Jan. 13, 2026) (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023)). As explained in § IV(D), *infra*, Plaintiffs assert an invasion of privacy claim and thus allege a privacy injury cognizable at common law. When "analogiz[ing] to harms recognized by the common law, [courts] are meant to look for a 'close relationship' in kind, not degree." *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462 (7th Cir. 2020) (quoting *Spokeo*, 578 U.S. at 341); *see also Ewing v. Med-1 Sols., LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) ("The close-relationship inquiry looks for 'a close historical or common-law analogue' to the alleged injury but does not require an 'exact duplicate.'" (quoting *TransUnion*, 594 U.S. at 424)). "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989); *see also Roper v. Rise Interactive Media & Analytics, LLC*, 2023 U.S. Dist. LEXIS 201955, at *8 (N.D. Ill. Nov. 9, 2023). "Loss of privacy through the disclosure of private information is an intangible harm, but one that courts routinely recognize as concrete given their 'close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.'" *Id.* (quoting *Transunion*, 594 U.S. at 425). Indeed, "[a]s the Seventh Circuit has recognized, 'intangible harms, such as reputational harms, disclosure of private information, and intrusion upon seclusion' can qualify as concrete." *L.C. v. Fertility Ctrs. of Ill., PLLC*, 2025 U.S. Dist. LEXIS 252774, at *9 (N.D. Ill. Dec. 8, 2025) (quoting *Wood v. Sec. Credit Servs.*, 126 F.4th 1303, 1309 (7th Cir. 2025)). This is precisely what Plaintiffs allege in this case: that DeVry injured them by disclosing their Sensitive Information *without* their consent, thus, robbing them of the ability to control their personal information. *See* Compl. ¶¶

16-18, 21-23, 26-28. Thus, while DeVry may ultimately disagree about the viability about Plaintiffs' claims, "[w]hether [plaintiff] would prevail in a lawsuit for common law invasion of privacy is irrelevant. It is enough to say that the harm alleged in her complaint resembles the harm associated with intrusion upon seclusion." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1192 (7th Cir. 2021). To go any further at this stage would require this Court to address the merits, rather than answering the question of whether Plaintiffs have properly asserted an injury for the purpose of establishing Article III standing. *See Heartland Dental*, 2026 U.S. Dist. LEXIS 6294, at *9 ("Disregarding the intrusion-upon-seclusion analogy would require this court to wade too far into the merits"). Accordingly, Plaintiffs have properly plead concrete injury sufficient to confer Article III standing.

**B. PLAINTIFFS' ECPA CLAIM IS WELL-PLED.**

**i. Plaintiffs' allegations satisfy the ECPA's crime-tort exception.**

A claim exists under the ECPA where a defendant intentionally uses or discloses the contents of an intercepted electronic communication. 18 U.S.C. § 2511(1)(c)-(d). Where, like here, the defendant is a party to the communication, liability may still be established through the 'crime-tort exception' if the interception is made "for the purpose of committing [a] criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiffs' allegations thus satisfy the crime-tort exception because they plausibly allege that DeVry installed and configured the Tracking Tools to disclose their Sensitive Information to third parties, including Google, without their knowledge or consent. In other words, Plaintiffs allege that DeVry's purpose in installing the Tracking Tools was to commit an act that violates the law: disclosure of protected student records without authorization in violation of FERPA, as well as the other causes of action asserted in the Complaint. In response, DeVry does not dispute that it intentionally employed the Tracking Tools and that those Tracking Tools intercepted Plaintiffs' Sensitive Information. Rather, it argues that (1) Plaintiffs fail to allege disclosure of protected "education records"; (2) that a FERPA

violation cannot satisfy the crime-tort exception for want of a private right of action; and (3) that the financial motive underpinning DeVry's disclosure of sensitive student records insulates it from liability. For the reasons that follow, all three arguments are meritless.

### ii. DeVry disclosed Plaintiffs' education records to unauthorized third parties in violation of FERPA.

Under FERPA, "education records" are "those records, files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution." 20 U.S.C. § 1232g(a)(4)(A); 34 C.F.R. § 99.3. Education records specifically "include but are not limited to grades, transcripts, class lists, student course schedules, health records (at the K-12 level), student financial information (at the postsecondary level), and student discipline files." Compl. ¶ 86.[2] FERPA prohibits an educational institution or agency from disclosing personally identifiable information from a student's education records without signed and dated written consent, subject to limited exceptions. *See* 34 C.F.R. 99.30-31. The information alleged by Plaintiffs—course enrollment, financial aid status, assignment submissions, and grades—falls squarely within this definition of protected education records. *See* Compl. ¶ 66. Moreover, this Sensitive Information was inarguably personally identifiable because it was sent to Google with a specific "personal identifier" used by Google to identify Internet users through their Google accounts. 34 C.F.R. 99.3; *see also* Compl. ¶¶ 66-67, Fig. 1-4.

DeVry's attempt to characterize Plaintiffs' Sensitive Information as "directory information" ignores the plain language of the Complaint. Directory information is limited to relatively innocuous identifiers such as "name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended." 20 U.S.C. § 1232g(a)(5)(A); 34 C.F.R. § 99.3. Notably absent from this list is course-specific information such as individual course enrollments, assignment names, grades,

[2] *Citing What is an education record?*, U.S. DEP'T OF ED., www.studentprivacy.ed.gov/faq/what-education-record (last visited Apr. 15, 2026).

and financial aid status. The exemplar figures in the Complaint demonstrate that the Tracking Tools transmitted, "in plain English, the student's full name, course titles and numbers, and past and future assignment names," as well as "navigation information indicating what webpage the student is viewing" when checking their financial aid status. This granular academic and financial information goes far beyond the general directory information described by FERPA. Indeed, the U.S. Department of Education has specifically advised that such information constitutes protected "education records" under FERPA. *See* n. 2, *supra*. Moreover, DeVry's own FERPA Policy restates the same definition of "directory information" set forth by FERPA which does not include the information that Plaintiffs allege to have been disclosed in the Complaint. *See* Mot. at 4-5.[3]

**iii. DeVry's Violation of FERPA Satisfies the Crime-Tort Exception.**

DeVry argues that Plaintiffs' Complaint attempts to assert "a non-existent private right to enforce FERPA." Mot. at 11. Not so. Plaintiffs do not bring an independent cause of action under FERPA. Rather, Plaintiffs correctly allege that the crime-tort exception is satisfied by a FERPA violation because the crime-tort exception is not limited only to statutes that establish a private right of action. For example, courts both "in this District" and from "coast to coast have recognized that a violation of HIPAA"—another federal statute protecting the privacy of individually identifiable information that does not create a private right of action—"can give rise to the crime-tort exception under the ECPA[.]" *Stein v. Edward-Elmhurst Health*, 2025 U.S. Dist. LEXIS 31273, at *11-12 (N.D. Ill.

[3] Even if Plaintiffs had alleged disclosure of only directory information, FERPA requires an "institution making public directory information" to "give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency[.]" 20 U.S.C.S. § 1232g. Yet, the list of directory information that DeVry states may be disclosed to third parties in its FERPA Policy does not include the course, transcript and financial aid information alleged by Plaintiffs. *See generally*, Mot., Ex. C; *see also* § IV(H), *infra*. Thus, DeVry would still be in violation of FERPA even if the information alleged by Plaintiffs did in fact constitute directory information.

Feb. 21, 2025) (collecting cases).[4] Indeed, under near-identical circumstances to the instant matter, courts within this district have found allegations that a defendant disclosed FERPA-protected information using Tracking Tools sufficient to preclude dismissal. *Q.J. v. Powerschool Holdings, LLC*, 2025 U.S. Dist. LEXIS 161612, at *17 (N.D. Ill. Aug. 20, 2025) ("[r]elevant distinctions between HIPAA and the statutes that Plaintiff invokes in this case [including FERPA], might appear at later stages of the case. But at this early stage, the Court sees none[.]"; *Dawson v. Univ. of Phx., Inc.*, 2026 U.S. Dist. LEXIS 6299, at *44 (N.D. Ill. Jan. 13, 2026) ("At this stage, the Court finds it at least plausible that the crime-tort exception to the one-party consent exception applies" where plaintiff alleged defendant "procured third-party entities for the purpose of intercepting communications and obtaining data from students and other users of the university's website despite being protected from disclosure by law").

Moreover, even if the Court were to conclude that Plaintiffs have not alleged a violation of FERPA, the crime-tort exception would still apply. ***First,*** every cause of action included in the Complaint arises out of the exact same conduct that Plaintiffs allege violates FERPA: DeVry's use of the Tracking Tools to disclose its student's Sensitive Information without their knowledge or consent. Thus, any well-pled cause of action asserted in the Complaint is also sufficient to satisfy the crime-tort exception. ***Second***, as an Illinois entity, DeVry is regulated under the Illinois School Student

[4] *See also Theys v. Dental Intel., Inc.*, 2026 U.S. Dist. LEXIS 46654, at *22 (N.D. Ill. Mar. 6, 2026) (finding crime-tort exception satisfied through use of tracking technologies to disclose HIPAA-protected information); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 U.S. Dist. LEXIS 161090, at *3 (N.D. Ill. Sep. 9, 2024) (same); *Rush III*, 2023 U.S. Dist. LEXIS 219895, at *3 (same); *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *7 (same); *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 U.S. Dist. LEXIS 60486, at *16 (N.D. Ill. Mar. 31, 2025) (same); *Hartley v. Univ. of Chi. Med. Ctr.*, 2024 U.S. Dist. LEXIS 78517 (N.D. Ill. Apr. 30, 2024) (same); *R.S. v. Prime Healthcare Servs.*, 2025 U.S. Dist. LEXIS 6338, at *20 (C.D. Cal. Jan. 13, 2025). (same); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 67497, at *4 (C.D. Cal. Apr. 11, 2024) (same); *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *23 (W.D.N.Y. Mar. 19, 2024) (same); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 928 (D. Minn. 2024) (same); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 380 (S.D.N.Y. 2024) (same); *Gay v. Garnet Health*, 2024 U.S. Dist. LEXIS 168515, at *13 (S.D.N.Y. Sept. 16, 2024) (same).

Records Act ("ISSRA") which (1) broadly prohibits disclosure of "any writing or other recorded information concerning a student and by which a student may be individually identified" and (2) authorizes consumers to pursue a private right of action for unlawful disclosures. 105 Ill. Comp. Stat. § 10/2(e); *see also* 105 Ill. Comp. Stat. § 10/6(a)(8); 105 Ill. Comp. Stat. § 10/9(b). DeVry's violation of the ISSRA is, therefore, also independently sufficient to satisfy the crime-tort exception.

**iv. DeVry's financial motive does not insulate it from liability under the ECPA.**

DeVry argues that the crime-tort exception does not apply because its motive for using the Tracking Tools was to make money, not to violate the law. Mot. at 14. This argument misunderstands the relevant standard. It is irrelevant whether DeVry had a business purpose for installing the Tracking Tools because a plaintiff invoking the crime-tort exception need not allege a ***criminal or tortious purpose***. A plaintiff need only plead "sufficient facts to support an inference that the offender intercepted the communication for the ***purpose of a criminal or tortious act***[.]" *Stein*, 2025 U.S. Dist. LEXIS 31273, at *9 (collecting cases) (emphasis added). The *Stein* court helpfully illustrates this principle with a pertinent analogy:

> A person can have a purpose of committing an act that is criminal or tortious, without having a criminal or tortious purpose. Imagine changing lanes on the highway without looking, and nailing the car in the other lane. The bad driver may have acted with the purpose of committing an act — changing lanes — that was tortious (because of the lack of ordinary care). But that's different than saying that the driver acted with a tortious purpose.
>
> The other reading would, in effect, import a *mens rea* element into the statute. Congress could have required a showing that the person acted with a criminal or tortious purpose. The text could have covered intercepting a communication 'for a criminal or tortious purpose.' Or, the statute could have applied to intercepting a communication 'for a criminal or tortious purpose to commit a criminal or tortious act.'
>
> But that's not what the text says. The 'act' must be criminal or tortious, but the 'purpose' does not need to be criminal or tortious.
>
> Even if the carve-out required a criminal or tortious purpose, it would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that

> the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime — it was to make money.

*Id.* at *14-16. As a result, courts evaluating DeVry's exact argument have resoundingly found that a defendant's financial motive does not bar application of the crime-tort exception. *See, e.g., Aspen*, 2024 U.S. Dist. LEXIS 161090, at *3 (the defendant's "[profit-related] purpose cannot be detached from the reality that [defendant] achieved this improved marketing and revenue boost by disclosing [p]laintiffs' [sensitive information]"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims").

Indeed, it is hard to imagine any scenario wherein a company commits an unlawful act simply for the sake of breaking the law. In the vast majority of cases, corporations that commit tortious acts have a financial motive: to obtain wealth through fraud, to cut costs by negligently ignoring business regulations or industry standards, to avoid the expenditure associated with a costly contractual provision. DeVry's position would necessarily imply, for example, that "the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money." *Prime Healthcare*, 2025 U.S. Dist. LEXIS 6338, at *10. With blackmail, "the interceptor's primary purpose would be to make money. And blackmail would merely be a means by which to make money. Of course, this is often the end goal for blackmail." *Id.* at *20. Thus, under DeVry's reading, "blackmail would rarely, if ever, violate the ECPA…This cannot be the case." *Id.*

In the face of this voluminous authority, DeVry supports its argument with one out-of-Circuit case, and one case currently on appeal. The Court should disregard these meager offerings and find that DeVry's financial motive does not insulate it from liability under the ECPA, as essentially every court in this District has done under similar circumstances.

### C. PLAINTIFFS' IEA CLAIM IS WELL-PLED.

Under 720 ILCS 5/14-2(a)(3), it is unlawful under the IEA to "knowingly and intentionally . . . intercept, record, or transcribe, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication." The IEA provides for civil remedies to injured parties against the eavesdropper, ***and the eavesdropper's principal***. 720 ILCS 5/14-6 (emphasis added). The IEA defines "principal" as "any person who: (1) knowingly employs another who illegally uses an eavesdropping device in the course of such employment; or (2) knowingly derives any benefit or information from the illegal use of an eavesdropping device by another; or (3) directs another to use an eavesdropping device illegally on his or her behalf." 720 ILCS 5/14-1(c). Plaintiffs allege that DeVry knowingly derives a benefit in the form of advertising and marketing analytics services from its use of Google's Tracking Tools that DeVry integrated, installed, and embedded into the Portals to allow Google to intercept Plaintiffs' communications to the Portals. Compl. ¶¶ 78-79. These allegations state a claim under the IEA.

*Dawson v. Univ. of Phx., Inc.* is instructive. As an initial matter, the *Dawson* court rejected the same narrow reading of the IEA that DeVry advances here: that there are no oral conversations at issue. *See* Mot. at 13. The Court held, "[t]he IEA expansively defines an 'eavesdropper' to include 'any person . . . who acts as a principal,' . . . and that person need not participate in a private (oral) conversation." *Dawson*, 2026 U.S. Dist. LEXIS 6299, at *50 (citing 720 ILCS 5/14-1(b)). Like Plaintiffs do here, the *Dawson* plaintiff alleged that "the third-parties running tracking technology on the University's website are not parties to her communications and the third parties' [sic] computer codes and program were 'used to intercept, monitor, capture, and record Plaintiff's and Illinois Subclass members' communications and data transmissions while they were accessing the Website." 2026 U.S. Dist. LEXIS 6299, at *48. The *Dawson* court found these allegations adequately alleged a violation of

720 ILCS 5/14-2(a)(3). *Id.* Additionally, the *Dawson* court further concluded that allegations that the defendant "discloses and allows the interception of personally identifiable information and communications to generate increased profits by way of [targeted advertising]" plausibly alleges that defendant can be considered the principal that increased profit ('derived a benefit') from the use of cookies and tracking technology ('eavesdropping device') on the website by third parties ('by another'). *Id.* The Court should find the same here and deny DeVry's Motion to Dismiss as to Plaintiffs' IEA claim. *See also Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 853 (N.D. Ill. 2023) (declining to dismiss IEA premised on principal liability where defendant profited from use of tracking tools to transmit plaintiff's sensitive data).

### D. PLAINTIFFS PROPERLY PLEAD A CLAIM FOR INVASION OF PRIVACY BASED ON THE ELEMENTS OF PUBLICITY GIVEN TO PRIVATE LIFE.

Illinois courts follow the invasion of privacy standard set forth in the Restatement (Second) of Torts. *Reed v. MRS BPO, L.L.C.*, 2022 U.S. Dist. LEXIS 156394, at *10 (N.D. Ill. Aug. 30, 2022). Under Illinois law, a plaintiff alleging invasion of privacy through publicity given to private life must show that "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 579 (2000). A plaintiff has properly alleged publicity where she shows that a matter is communicated "'to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'" *Id.* (quoting Rest. 2d of Torts, § 652D). Under this standard, even a "statement made in an address to a large audience, is sufficient to give publicity[.]" Rest. 2d of Torts, § 652D.

In their Complaint, Plaintiffs allege that their Sensitive Information was transmitted to a massive corporation, Google, not only for its own use but for use in a mass advertising surveillance apparatus that includes the operators of ***74-percent*** of all web traffic. Compl. ¶¶ 5-10, ¶ 41 (emphasis added). Google makes no secret about the reason for this surveillance: all the information it gathers is

used to sell targeted advertising to third parties. *Id.* at ¶ 38. In the words of Google's former CEO, these profiles allow advertisers to "know where you are[,] where you've been[,] and what you're thinking about." *Id.* ¶ 43. Courts have found such allegations properly plead a claim for invasion of privacy under similar or identical circumstances. *See, e.g., Theys*, 2026 U.S. Dist. LEXIS 46654, at *22 ("Such alleged disclosure of private health information to a third party, via embedded tracking pixels, for targeted marketing purposes is sufficiently analogous to the common-law tort of public disclosure of private facts." (collecting cases)); *Brahm v. Hosp. Sisters Health Sys.*, 2024 U.S. Dist. LEXIS 114827, at *20-21 (W.D. Wis. June 28, 2024) (finding sufficient publicity where plaintiffs alleged that information disclosed through tracking pixel was transmitted to "various technology companies that employ hundreds of thousands of employees who have access to this information"); *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 787 (N.D. Cal. 2019) (plaintiffs pled public disclosure of private facts because they alleged defendant made their internet data "widely available to third parties in a variety of ways; and as a result, third parties were able to develop detailed dossiers on the plaintiffs including information about their locations, their religious and political preferences, their video-watching habits, and other sensitive matters"). As explained above, the information disclosed by DeVry includes sensitive educational records that are specifically protected under both federal and state laws governing the privacy of student information. The disclosure of such information is undoubtedly highly offensive. Additionally, the fact that Plaintiffs "volunteer[ed] the information…disclosed," (Mot. at 15), does not change that result. *See Cherkin v. PowerSchool Holdings, Inc.*, 2025 U.S. Dist. LEXIS 48424, at *8 (N.D. Cal. Mar. 17, 2025) ("The Court sees no basis for concluding that invasion is any less egregious because students are themselves producing the relevant information by using a pedagogical tool for their [] education…."). Therefore, Plaintiffs have properly alleged invasion of privacy through publication of private facts.

### E. PLAINTIFFS' NEGLIGENCE CLAIM IS WELL PLED.

In 2017, the Illinois Legislature amended the Personal Information Protection Act ("PIPA") to require "data collectors in possession of the personal information of Illinois residents" to "implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 Ill. Comp. Stat. Ann. 530/45. Since this amendment, virtually every court in this District that has considered the issue, including cases involving the same or similar Tracking Tools as those here, has found that "Illinois law imposes a duty on data collectors to maintain reasonable security measures…You collect it, you keep it safe." *Stein*, 2025 U.S. Dist. LEXIS 31273, at *22-23; *see also Aspen*, 2024 U.S. Dist. LEXIS 161090, at *25 (same); *Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *19 (same); *Mayer*, 2025 U.S. Dist. LEXIS 60486, at *16 (same).

DeVry opposes this conclusion by citing *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803 (7th Cir. 2018) which relied on *Cooney v. Chi. Pub. Schs*, 407 Ill. App. 3d 358, 347 Ill. Dec. 733, 943 N.E.2d 23 (2010), a case decided seven years *before* PIPA was amended. As one court in this District explains:

> Based on a prior version of the Illinois Personal Information Protection Act, the *Cooney* court held that the statute *as then in effect 'reflect[ed] legislative* intent to limit defendants' duty to providing notice' of a data breach but does not create a duty to safeguard information….The Seventh Circuit applied *Cooney*'s reasoning in *Schnuck Markets* to affirm the dismissal of a negligence claim, 'in the absence of some other reason why the Illinois Supreme Court would likely disagree with the *Cooney* analysis.'

*In re Kemper Sports Mgmt. Data Breach Litig.,* 2026 U.S. Dist. LEXIS 749, at *15 (N.D. Ill. Jan. 5, 2026) (internal citations omitted). Indeed, following the PIPA amendment, the Illinois Appellate Court and numerous courts within this District have called into question the continued relevance of *Cooney* and, by extension, *Schnuck*. *See Flores v. AON Corp.*, 2023 IL App (1st) 230140, ¶ 23 ("Given that the legislature has now created a duty to maintain reasonable security measures under the Information Protection Act, the reasoning of the *Cooney* court no longer applies"); *In re Mondelez Data Breach Litig.*,

2024 U.S. Dist. LEXIS 97948, at *13 (N.D. Ill. June 3, 2024) (same); *Wittmeyer v. Heartland All. for Hum. Needs & Rights*, 2024 U.S. Dist. LEXIS 8803, at *6-7 (N.D. Ill. Jan. 17, 2024) (same); *In re Gallagher Data Breach Ligation*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) ("[PIPA's] amendment calls into question the continued viability of *Schnuck*'s holding that there exists no duty under Illinois law to safeguard personal information"). Consequently, courts in this District routinely find allegations like Plaintiffs' sufficient to allege a duty under analogous circumstances.[5]

DeVry further argues that Plaintiffs have not alleged a cognizable injury supporting their negligence claim because claims for economic losses must sound in contract. *See* Mot. at 16.[6] But the "Illinois Supreme Court has held that the economic loss doctrine applies only where the duty of the party performing the service is defined by contract executed with the client." *Wittmeyer*, 2024 U.S. Dist. LEXIS 8803, at *7-8 (citing *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137 (Ill. 1994)). "To determine whether the *Moorman* doctrine bars tort claims, the key question is whether the defendant's duty arose by operation of contract or existed independent of the contract." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012). Here, Plaintiffs allege that DeVry violated the extracontractual duty of all data collectors "to maintain reasonable security measures." *Stein*, 2025 U.S. Dist. LEXIS 31273, at *22-23. The economic loss doctrine does not apply under such circumstances. *See Loyola Univ. Med. Ctr.*, 2024 U.S. Dist. LEXIS 119995, at *20 n.5 (economic loss

[5] *See, e.g., McClain v. Capital Vision Servs., LLC*, 2026 U.S. Dist. LEXIS 52341, at *18 (N.D. Ill. Mar. 13, 2026) (finding that "…it would be premature to conclude as a matter of law at this stage of the case that [defendant] had no duty to safeguard plaintiff's personal information."); *Theys*, U.S. Dist. LEXIS 46654, at *24 (N.D. Ill. Mar. 6, 2026) ("The court therefore cannot conclude at this stage that, as a matter of law, [d]efendants had no duty to safeguard [p]laintiffs' personal information."); *Nazzaro v. Tecta Am. Corp.*, 2025 U.S. Dist. LEXIS 175554, at *10 (N.D. Ill. Sept. 9, 2025) (declining to dismiss a negligence claim based on a common law duty to safeguard information); *Olson v. Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶ 53, *appeal denied* (Ill. June 25, 2025) (holding that the economic loss doctrine did not bar the plaintiffs' negligence claim because it was based on the employer defendant's "common law duty to safeguard personal information rather than any express contractual duty").

[6] The term "economic loss doctrine" is interchangeable with the term "*Moorman* doctrine" under Illinois law.

doctrine inapplicable to negligence claim in pixel case because "plaintiffs do not allege that an express contractual obligation governed [defendant]'s duty to safeguard their health data"). Because Plaintiffs adequately allege a duty, breach of that duty, and damages, they have adequately pled a claim for negligence.

### F. PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED CONTRACT.

As students enrolled in DeVry's educational programs, Plaintiffs allege the existence of a sensitive relationship which included an implied promise of confidentiality, including as mandated by FERPA, which was breached by DeVry. In response, DeVry draws on wholly inapplicable case law to assert that Plaintiffs fail to allege both a meeting of the minds and cognizable damages. Neither argument is meritorious.

***First***, DeVry's reliance *iMotorsports, Inc. v. Vanderhall Motor Works, Inc.*, 2022 IL App (2d) 210785, ¶ 33 is misplaced. *See* Mot. at 17. In *iMotorsports*, the obligation depended upon by the plaintiff was defined by the terms of an expired contract. *Id.* As a result, the court subsequently found that the plaintiff had failed to allege that "that there was a 'meeting of the minds' to extend the [relevant contract provision] beyond the expiration date of the [express contract]." *Id.* at ¶ 33 (emphasis added). In contrast, Plaintiffs' implied contract claim rests upon the fact that the "***relationship between the parties***"—a student and their educational provider—is sufficiently sensitive to imply that DeVry "would take reasonable steps to ensure that plaintiffs' personal information would be protected from unauthorized disclosure." *Ferrara Candy Co.*, 2025 IL App (1st) 241126, ¶ 60 (emphasis added).[7] Here,

[7] *See also Theys*, 2026 U.S. Dist. LEXIS 46654, at *29 (plaintiffs adequately pled a meeting of the minds in analogous tracking tools case where they alleged that they "provided sensitive health information in exchange for dental related services and that they would not have entrusted [the] [d]efendants with that information absent an implied promise to safeguard it[.]"); *In re Lurie Child.'s Hosp. Data Sec. Litig.*, 2025 U.S. Dist. LEXIS 190839, at *39-40 (N.D. Ill. Sep. 27, 2025) ("Indeed, an implied contract can be implied simply from the nature of Plaintiffs' relationship with Lurie: since Plaintiffs were required to provide Lurie with their PII and PHI to receive services, they could reasonably expect that Lurie, in turn, would keep this information private and protect it from unauthorized disclosures.") (internal quotations omitted); *Wittmeyer*, 2024 U.S. Dist. LEXIS 8803, at *15 ("It can be inferred from the plaintiffs' relationship to Heartland (as clients) and the requirement that the plaintiffs provide sensitive information to Heartland as a condition of receiving its services that Heartland, in turn, would keep this information private and protect it from unauthorized disclosures.").

like in *Ferrara Candy*, *Theys*, *Lurie*, and *Wittmeyer*, Plaintiffs allege that they were required to provide their Sensitive Information to DeVry to receive DeVry's services--enrollment in courses and use of the Portals. Compl. ¶¶ 4, 64, 141. Plaintiffs further allege that they would not have entrusted DeVry with their Sensitive Information without an implied contract obligating DeVry to not disclose such information without their consent. *Id.* at ¶ 143; *see also McLaughlin v. Taylor Univ.*, 2024 U.S. Dist. LEXIS 172249, at *23 (N.D. Ind. Sep. 23, 2024) ("Whether the relationship is employer-to-employee or ***university-to-student***, there is a general understanding that PII should be kept private") (emphasis added).

***Second***, DeVry relies on data breach cases to argue that Plaintiffs fail to allege adequate damages. *See e.g., M.C. v. E. Side Health Dist.*, 2025 LX 109404 (S.D. Ill. Feb. 7, 2025) (case concerning alleged compromise of plaintiff's personal information in a data breach); *Flores*, 2023 IL App (1st) 230140 (same); *Petta v. Christie Bus. Holding Co., P.C.*, 2023 IL App (5th) 220742, ¶ 3 (same); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 965 (7th Cir. 2016) (same); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 690 (7th Cir. 2015) (same). This case is different. Plaintiffs allege that DeVry ***intended*** to disclose their Sensitive Information to Google because it received material benefits ***from such disclosure***. Compl. ¶¶ 78-79. The value of Plaintiffs' Sensitive Information was not incidental to DeVry's collection and disclosure—it was the very reason for it. *Id.* ¶¶ 80-84 (specifically detailing value of user information). Under these circumstances, the Court should find that Plaintiffs'

allegations inherently state an economic injury because something has been taken from them and exchanged by DeVry for compensation.[8]

**G. PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS WELL PLED.**

Plaintiffs assert their unjust enrichment claim in the alternative to their breach of contract claim. Compl. ¶ 149. Accordingly, Plaintiffs' unjust enrichment claim is properly pled for the same reasons as their implied contract claim. *See Doe v. Fertility Ctrs. of Ill.*, 2022 U.S. Dist. LEXIS 59145, at *15 (N.D. Ill. Mar. 31, 2022) (allowing an unjust enrichment claim to proceed where the contract claim survived dismissal).

DeVry also argues that unjust enrichment is not an independent cause of action. Mot. at 19. However, DeVry misinterprets the authorities it relies on. Indeed, in *Cleary v. Philip Morris Inc.*, the court acknowledged that "[t]he Illinois Supreme Court appears to recognize unjust enrichment as an independent cause of action[,]" but "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." 656 F.3d 511, 516-17 (7th Cir. 2011); *see also Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (quoting *id.*); *Juenger v. Deaconess Health Sys.*, 2025 U.S. Dist. LEXIS 193628, at *17 (S.D. Ill. Sep. 30, 2025) (the plaintiff's unjust enrichment claim "rest[ed] on the same improper conduct alleged in another claim") (*quoting Cleary*, 656 F.3d at 517); *Hannant v. Sarah D. Culbertson Mem'l Hosp.*, 2025 U.S. Dist. LEXIS 161412, at *48 (C.D. Ill. Aug. 20, 2025) (dismissing unjust enrichment claim arising out of the same conduct that

---

[8] Courts in this District have implicitly recognized the inherent economic value in PII. For example, while evaluating the constitutionality of the Video Privacy Protection Act, the court in *Dawson v. Univ. of Phx., Inc.* found that a university's alleged transfer of a student's PII to third-parties was commercial speech because "[b]oth the [u]niversity and third-party technology companies were motivated to more effectively sell or otherwise monetize their products . . . and [the disclosure] serv[ed] no non-economic purpose[.]"2026 U.S. Dist. LEXIS 6299, at *31-32. In the same case, the court also held that the university was a "principal" under the Illinois Eavesdropping Act ("IEA") because it "earned increased profit ('derived a benefit') from the use of cookies and tracking technology . . . on [its] website by third-parties[.]" *Id.* at *48-49 (quoting 720 ILCS 5/14-1(c)(2)); *see also id.* at *51-52 (observing that while the IEA does not expressly require that a plaintiff show actual damage to seek recovery, the plaintiff's allegation that she has suffered actual damages were sufficient on a motion to dismiss).

formed the basis for other claims that were subject to dismissal); *Aspen*, 2024 U.S. Dist. LEXIS 161090, at *26 (same) (*quoting Cleary*, 656 F.3d at 517); *Dinerstein v. Google, Ltd. Liab. Co.*, 484 F. Supp. 3d 561, 595 (N.D. Ill. 2020) (same).

Finally, DeVry contends that Plaintiffs have failed to plausibly allege that DeVry unjustly retained a benefit to Plaintiffs' detriment because Plaintiffs' PII does not have independent monetary value. Mot. at 19. This argument fails for the reasons explained § IV(F), *supra*. *In re Arthur J. Gallagher*, 631 F. Supp. 3d at 592, a data breach case, is inapposite. There, the plaintiffs' allegations suggested that "third-party hackers, not [the] [d]efendants, are the ones who benefitted from the Data Breach." *Id.* Here, in contrast, Plaintiffs allege that DeVry itself was improperly enriched when it received valuable marketing and analytics services in exchange for Plaintiffs' and Class Members' Sensitive Information. Compl. ¶¶ 78-79. Plaintiffs further allege that this allowed DeVry to save costs it reasonably should have expended on marketing and/or data security measures to secure Plaintiffs' and Class Members' Sensitive Information. *Id.* ¶ 152. Similar theories have been found sufficient within an unjust enrichment theory of liability. *See, e.g., Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020) (unjust enrichment awards can include "avoided research and development costs").

### H. PLAINTIFFS DID NOT CONSENT TO DEVRY'S UNAUTHORIZED DISCLOSURES OF THEIR SENSITIVE INFORMATION.

Initially, DeVry fails to satisfy its burden of establishing the existence of the agreements it seeks to enforce. "[W]hether plaintiffs waived their rights to bring suit based on their alleged consent to [DeVry's] Privacy Policy is an affirmative defense[.]" *Rodriguez v. ByteDance, Inc.*, 2025 U.S. Dist. LEXIS 37355, at *8 (N.D. Ill. Mar. 3, 2025). "The 'affirmative defense' label allocates the burdens of pleading and proof; a defendant bears the burden to plead and prove any affirmative defenses it chooses to raise." *Am. All. for Equal Rts. v. A.B.A.*, 2026 U.S. Dist. LEXIS 10904, at *24 (N.D. Ill. Jan. 21, 2026). Yet, in its Motion, DeVry merely states that "consent [to the TOS and Privacy Policy] is a requirement for access to the Portal" but fails to provide any explanation of how, when,

or in what manner in obtains consent from students even generally, let alone with specific regards to Plaintiffs. Mot. at 11. DeVry's failure to provide any evidentiary support thus dooms its affirmative defense at the outset.

Regardless, even if DeVry could show that Plaintiffs agreed to its website policies, it still could not establish Plaintiffs' consent to its unauthorized disclosure of their Sensitive Information because the cited policy language does not describe the disclosures alleged by Plaintiffs. Rather, DeVry's Privacy Policy and FERPA Policy explain that "***Directory Information***" may be disclosed to third parties, and further explains that this directory information is limited to: "Name, address, telephone number, email address, date and place of birth, dates of attendance, previous institution(s) attended, major field of study (program), enrollment status, degrees and awards, past and present participation in officially recognized activities." *Id.* at 4-5 (emphasis added). This list does not include the course, transcript and financial aid information alleged by Plaintiffs, which, as explained above, constitute FERPA-protected education records and are thus not directory information at all. *See* § IV(B)(ii), *supra*. Consequently, DeVry's consent argument fails both procedurally and substantively.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendant's Motion be DENIED.

Dated: April 24, 2026

Respectfully submitted,

*/s/ Sonjay Singh*
Sonjay Singh (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
400 East Pratt Street
8th Floor - #16946751
Baltimore, MD 21202
Tel: (212) 532-1091
E: ssingh@sirillp.com

****Additional Signatures on Following Page****

Mason Barney
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Main: 888-SIRI-LAW
Fax: 646-417-5967
Email: mbarney@sirillp.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on April 24, 2026, I filed the attached with the Clerk of the Court using the Court's electronic filing system and will send such filing to all attorneys of record.

*/s/ Sonjay Singh*
Sonjay Singh (*pro hac vice*)